UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IMELDA TOVAR, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-353 |
| | § | |
| JOHN MCHUGH, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING SUMMARY JUDGMENT

Pending before the Court is Defendant John M. McHugh, Secretary of the Army's Motion for Summary Judgment (D.E. 25) and Plaintiff Imelda Tovar's Response (D.E.26). For the reasons set out below, the Motion is GRANTED.

### I. Jurisdiction

The Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346, as this is a case stating a violation of civil rights in employment against the government. *See* 28 U.S.C. § 1343 and 42 U.S.C. § 2000e-5.

### II. Timeliness

As a preliminary matter, the Court notes that the deadline for filing dispositive motions in this case was set as August 15, 2011. D.E. 10. Defendant's Motion was filed on August 16, 2011, one day late. Furthermore, motions may be deemed unopposed at the expiration of 21 days after they are filed if no response is filed. D.E. 10, Local Rule 7.4. Thus the Motion was subject to being granted as unopposed on September 6, 2011. On September 8, 2011, Plaintiff filed her Response, two days late.

Neither party sought leave of court to file their documents after their respective deadlines.

Moreover, Plaintiff did not include in her Response any complaint objecting to the timeliness of the Defendant's Motion. Nonetheless, the Court has determined that the just, speedy, and inexpensive determination of the action counsels in favor of considering the motion and the response.

Therefore, pursuant to Fed. R. Civ. P. 1 and the Court's inherent power to manage its own affairs so as to achieve the orderly and expeditious disposition of cases, the Court *sua sponte* grants leave to both parties to file their respective motion and response out of time. *See generally*, *Link v. Wabash Railroad Co.*, 370 U.S. 626, 632 (1962); *Sturgeon v. Airborne Freight Corp.*, 778 F.2d 1154, 1159 (5th Cir.1985).

## III.     Facts and Claim

Plaintiff's complaint states claims for discrimination on the basis of sex (female) and retaliation. Her Complaint also included a claim for race discrimination, which has been dismissed by previous order of this Court and which, in her Response (D.E. 26), Plaintiff admits was inadvertently included in the Complaint.

Plaintiff Imelda Tovar is a Hispanic female with an Associate's Degree in Applied Science. After being hired as an aircraft equipment cleaner at the Corpus Christi Army Depot in 2005, she was promoted to GS-09 as an Environmental Protection Specialist in the hazardous materials ("hazmat") program in 2008. She was selected for that promotion by Elza Cushing, a Hispanic female with a master's degree in civil engineering. Cushing was Tovar's immediate supervisor after Glenda Simnacher designated Tovar as the Army Depot's Contracting Officer's Representative ("COR") for its hazmat contract with Calidad Environmental Services.

Six months later, in June 2008, complaints from Tovar's Calidad counterparts triggered an effort to remove Tovar's COR designation. But Cushing defended Tovar and delayed any

change in Tovar's status. Thereafter, complaints continued, particularly with respect to the handling of Calidad invoices for overtime. Tovar's supervisors instructed her to be flexible in approving overtime because of the nature of the contract and the critical business involved. However, Tovar resisted, insisting upon strict compliance and relying on rigid reporting materials.

On September 16, 2008, Cushing issued a formal warning to Tovar about a failure to follow her chain of command, failure to comply with proper directives and orders, and her workplace attitude. Also on September 16, 2008, Tovar met with Peter Epperson, her second level supervisor, at which time they discussed the Contracting Office's complaints regarding her COR duties.

A month later, Epperson complained to Cushing about Tovar's lack of improvement after her formal warning. Despite mounting tensions with Tovar as COR on the Calidad contract and her growing antagonism with Calidad's Program Manager, Tovar received excellent ratings on her February 2009 performance review, which noted her high potential if she worked on flexibility and interpersonal skills and teamwork.

On March 26, 2009, in a meeting with Epperson and Cushing, Tovar addressed Epperson in what he described as an insubordinate, disrespectful, and combative manner. A few weeks later, Tovar emailed Cushing, copying Epperson and others, complaining of having been denied a number of requests relating to time off and training and accusing Cushing of having a condescending and unbearable attitude, creating a hostile work environment, concluding "Your management style has and is creating a hostile work environment and needs to stop. Your attention to my concern is requested." At a meeting held April 23, 2009 between Epperson, the Contracting Chief Rod Wolthoff, Contracting Officer Glenda Simnacher, and Peggy Echols, the

decision was made to remove Tovar's COR duties because of her inflexibility and attitude, having a "severe adverse effect" on others in the Environmental Division and its functions and mission.

By the end of April, 2009, Cushing informed Tovar that she would soon be removed as COR for the Calidad contract. On April 29, 2009, Tovar sent an angry and insubordinate email to Cushing, with a copy to Epperson and the Commanding Officer of the Corpus Christi Army Depot complaining that Cushing was interfering with the Calidad contract administration and requesting to be removed as COR. In that email, Tovar was accusatory, disrespectful, and condescending and, according to Epperson, appeared to have no concept of how her superiors had been required to handle her COR duties when Tovar was not available or on duty. Tovar chose to treat their supervision and substitution as interference in her work and mishandling of the job.

Tovar was told, orally, that she was immediately removed from her COR duties. She was not willing to accept that news until it came in writing from the Contracting Officer. On May 4, 2009, Epperson documented the problems he had encountered with Tovar's job performance, along with the April 23, 2009 meeting resulting in the decision to reassign her. On May 5, 2009, Tovar received an email from Cushing regarding problems with the administration of her duties and Tovar's noncompliance with directives and inappropriate delegation of her duties to others. Tovar responded by complaining of being overworked and telling her supervisor that her duties have "been a challenge due to your poor guidance and your inconsistencies." Tovar initiated EEOC counseling that day.

On May 11, 2009, Cushing issued a memorandum explaining that Tovar was being reassigned from Hazardous Materials to the Air Quality Program, but would retain the same title

and pay grade. The memorandum summarizes the difficulties they had had with Tovar's work performance and the efforts that had been made to improve the situation, and ended with the hope that the reassignment would be a better fit for Tovar. The next day, Tovar initiated a formal EEOC administrative complaint. That complaint addressed her removal from COR duties as a "reprisal" for complaining to the EEOC.

On September 2, 2009, in her new position, Tovar undertook to address a regulatory matter without any authority or approval. In a memorandum regarding the issue, her action was considered, "renegade," and displayed "an intransigent lack of cooperation within the workplace; bypassing of established workplace practices/protocols, with a penchant to undermine supervisory authority; and, moving out on your own without a sense of your place in the organization." The December 14, 2009 memorandum discussing the September 2 matter notes that, both in her previous COR duties and her current duties, she had asked for replacement of her supervisors as lacking "the requisite knowledge, skills, and abilities" to provide supervision, even though those supervisors were well qualified and experienced. The memorandum served as a final warning before moving to disciplinary action.

On October 9 and 16, 2009, Investigator Raymond Cantu of the Civilian Personnel Management Service Investigations and Resolutions Division held a Fact Finding Conference with recorded testimony of Imelda Tovar, Elza Cushing, Peter Epperson, and other witnesses. When asked whether the change in her assignment cost her any pay or entitlements, Tovar responded that it did not. When asked how she was harmed by the reassignment, Tovar admitted that she was not harmed by the reassignment but complained that she was harassed before the assignment, from September, 2008 until the reassignment took place.

When asked about sex discrimination, Tovar recited that certain duties that she thought

were included in her job description were assigned to men. The investigator observed that the men at issue actually had higher pay grades and were not thus useful comparisons for sex inequality complaints that ordinarily involve persons in the same positions. Tovar had no response to that observation. Neither could she come up with any instance of overt discrimination.

When asked how she could be suffering retaliation or reprisal for making her EEOC complaint, which came after her reassignment, Tovar again had no substantive response. While she complains of a hostile work environment, the evidence shows that Tovar's approach to her job was inflexible and caused problems with the contract she was monitoring. Her supervisors made a number of efforts to address those problems and cure them, but Tovar refused to change.

The transcript of the Fact Finding Conference reveals that Tovar's predecessor in her job was a female, Debbie Smith. Ms. Smith received a temporary promotion when she took the job from pay grade 9 to pay grade 11. The male who held the position before Ms. Smith had been removed from the position due to a conflict of interest. In an audit of the CCAD hazmat program, a number of problems were identified that, among other things, led to an effort to "unbundle" the tasks performed by the person holding that position. So when Tovar assumed the position, a number of the tasks previously assigned were delegated to others, making the job less complex and difficult in order to cure problems previously experienced. Thus Tovar did not get a temporary promotion as had Smith.

## IV. Discussion

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which

summary judgment is sought. . . . The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Judwin Props., Inc., v. U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir. 1992).

Pursuant to Fed. R. Civ. P. 56(c)(1), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246 (5th Cir. 2003); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case." *Rivera*, 349 F.3d at 247.

The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of

evidence." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995); *see also Brown v. Houston*, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment"). Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party. *Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000).

### B. Sex Discrimination

To make a prima facie case of sex discrimination under Title VII, Tovar must show that "(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated." *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 184 (5th Cir.1999). *See also*, *McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007); *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004). On September 10, 2010, the Administrative Judge for the Equal Employment Opportunity Commission evaluated Tovar's complaints regarding her loss of COR designation and reassignment to the Air Quality Program and concluded in a summary judgment that Tovar had not been the victim of sex discrimination.

Defendant offered some of the EEOC administrative proceedings as summary judgment evidence under the public record exception to hearsay. Fed. R. Evid. 803(8). *See also, Chandler v. Roudebush*, 425 U.S. 840, 863 n.39 (1976); *Moss v. Ole South Real Estate*, 933 F.2d 1300, 1305-10 (5th Cir. 1991). Furthermore, Plaintiff Tovar attached the Findings of Fact and Conclusions of Law entered in the EEOC case to her original complaint. Tovar now asks that the administrative proceedings be excluded under the "untrustworthy" exception to Rule 803(8), arguing that the record does not reveal sufficient information regarding the skill and experience

of the investigator who conducted the Fact Finding Conference. Tovar does not offer any evidence of a specific deficiency in the investigator's qualifications. Neither does Tovar point out evidence in favor of Tovar that may have been overlooked because of that alleged deficiency. Finding that there is no *prima facie* untrustworthiness in the administrative proceedings, the Court will consider them pursuant to Rule 803(8).

It is clear from the summary judgment evidence in this case that Plaintiff Tovar has not raised evidence that creates a disputed issue of material fact on the third and fourth elements of a prima facie case of sex discrimination. With respect to the adverse employment action, she complains of being reassigned, but cannot avoid the fact that her reassignment was to a position with the same title and same pay grade.

Making or refusing a lateral reassignment does not ordinarily qualify as an adverse employment action under Title VII. *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003). Only "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating" satisfy the adverse employment action element. *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir.1995) (citation omitted). The reason for that is apparent in a quote from Chief Judge Posner, who wrote:

> Obviously a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action. A transfer involving no reduction in pay and no more than a minor change in working conditions will not do, either. Otherwise every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit. The Equal Employment Opportunity Commission, already staggering under an avalanche of filings too heavy for it to cope with, would be crushed, and serious complaints would be lost among the trivial.

*Burger v. Central Apartment Management, Inc.* 168 F.3d 875, 879 (5th Cir. 1999).

In some cases, however, a transfer can constitute a "demotion if the new position proves

objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999). Tovar's summary judgment evidence on this issue is cryptic:

> Q. How does that show that—that it's an adverse personnel action?
>
> A. It's a demotion.
>
> Q. Did you receive a reduction in pay?
>
> A. No.
>
> Q. Did—was there any changes [sic] in the insurance benefits, or deposit through a savings plan, anything like that that was a reduction?
>
> A. I did receive additional level response of supervisory, which lowers the level or the scope of complexity of the particular job. Also, denied the overtime that everybody else has because they were in program management versus developmental.
>
> Q. Do you have any documentation that shows you—shows you received less overtime because of that transfer?
>
> A. That is in the process of—through our discovery documents.

No such "discovery documents" were offered with the summary judgment response. Thus Tovar has not offered sufficient evidence to create a disputed issue of material fact on her claim of having experienced an adverse employment action. *See Magiera v. City of Dallas*, 389 Fed.Appx. 433, 438, 2010 WL 3168211, 3 (5th Cir. 2010) (citing *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (*en banc*) ("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden [on summary judgment in an employment discrimination case].")). Without evidence of an adverse employment action, an allegation of discrimination is not actionable. *McCoy, supra; Bryan, supra*.

With respect to her claim of sex discrimination, Tovar also had to show a prima facie

case that similarly situated males received better treatment. The evidence must address the alleged better treatment afforded a "comparator" that is "nearly identical" from the employer's perspective. *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005). In her summary judgment response, she claims that she was the victim of sex discrimination because her supervisor described her as "too passionately aggressive" in a meeting and "all the previous COR's were male." Response, D.E. 26, p. 4.

This evidence, if true, would not be sufficient to satisfy Plaintiff's burden. Tovar does not state that she was replaced by a male and she offers no reasoning or authority to support a finding that using a description that Tovar was "passionately aggressive" is overtly discriminatory. Moreover, the statement that "all the previous COR's were male," is not supported by the record. In fact, Tovar's immediate predecessor in her COR position was female. Thus Tovar's summary judgment response fails to support two of the elements on which she bears the burden of making a prima facie case in order to succeed on a sex discrimination claim. Summary judgment in favor of Defendant on this claim is granted.

### C. Retaliation

To make a prima facie case of retaliation, Tovar must show (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 129 (5th Cir. 2011). The "protected activity" for purposes of a Title VII matter includes "making charges, testifying, assisting, or participating in enforcement proceedings." 42 U.S.C.A. § 2000e-3.

Tovar did not file a formal complaint with the EEOC until May 12, 2009. She also claims to have sought counseling with the EEOC on May 5, 2009. These protected activities

occurred after the decision was made to reassign her and after that decision had been communicated to her by her immediate supervisor. Consequently, as a matter of law, they cannot serve as the basis for a retaliation claim. *See generally*, *Clark County School Dist. v. Breeden*, 532 U.S.268, 272 (2001); *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006).

Tovar suggests that the "seed of discontent" for Tovar's supervisor to retaliate started in "early September 2008." However, Tovar's summary judgment response does not document any "protected activity" prior to September 2008. She suggests that her objection to what she considered to be "unethical" practices with respect to the administration of the Calidad contract was the trigger for the alleged retaliation. However, she does not provide any authority to support treatment of a dispute over the way the employer does its general business as a "protected activity" under Title VII.

Tovar asks the Court to treat her superior's efforts to ostracize her as an "adverse employment action." But the Court does not have to reach that question. Even if the scope of what constitutes an adverse employment action in a retaliation claim exceeds that applicable to a sex discrimination case (as addressed above), the evidence does not support the finding of a protected activity preceding that alleged retaliation. The causal nexus simply does not exist for this claim. Summary judgment in favor of Defendant on this claim is granted.

## V. Evidentiary Objections

Tovar complains of the Declaration of Peter T. Epperson, claiming that it is not based on personal knowledge, is hearsay, and states conclusory facts. Finding that the Declaration is cumulative of other evidence to which no objection has been raised, the objections are overruled. Fed. R. Evid. 403.

## VI. Conclusion

For the reasons set forth above, Defendant John M. McHugh, Secretary of the Army's Motion for Summary Judgment (D.E. 25) is GRANTED.

ORDERED this 16th day of September, 2011.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE